MATTER OF M/V *GIOVE*

In FINE Proceedings

PAR-280.11

*Decided by Board April 2, 1959*

**Fine—Section 273(d)—Notice to detain on board not required where alien stowaway escapes prior to inspection.**

Section 273(d)(1) of the 1952 act imposes an absolute duty, without the requirement of notice, upon the responsible parties to detain alien stowaways on board the vessel until inspection by an immigration officer. Statutory duty exists despite lack of knowledge of stowaways' presence aboard the vessel until their apprehension ashore.

In re: M/V *GIOVE*, which arrived at Port Arthur, Texas, from foreign on December 22, 1957. Alien stowaways involved: A——M——, F—— G—— and G——D——.

### BEFORE THE BOARD

**Discussion:** On July 18, 1958, this Board dismissed the appeal from the district director's decision of February 18, 1958, directing that a penalty of $3,000, $1,000 as to each of the above-named stowaways, be imposed on S——C——, master, and/or the Port Arthur Steamship Agency, agents of the vessel. The specific violation charged was the failure to detain the three stowaways aboard the vessel until they had been inspected by an immigration officer. The request for mitigation or remission of the penalty was denied. Having subsequently authorized and heard oral argument on the motion, same will now be decided on the merits and denied.

The basic facts of this case are not in dispute. The three above-named aliens arrived in the United States aboard this vessel, *supra*, with the assistance of two members of the crew thereof. They succeeded in leaving the vessel undetected and without inspection by immigration officers. Two days after the vessel arrived, they were apprehended ashore at Mobile, Alabama, by Border Patrol officers of the Immigration Service. They were placed back aboard the vessel and they departed foreign with it.

There is no basis whatsoever for the argument that the prior decisions in this matter, both of the district director and of this Board, were based upon the erroneous assumption that the party here

299

sought to be charged with responsibility had been served with a notice to detain on board and deport (Form I-259) the stowaways. Both the district director and this board were aware of the absence of any such form, and the decisions were based upon the fact that the statute imposed on the parties named therein, including the ones here sought to be charged with liability, an absolute duty to detain these stowaways aboard the vessel at all times until they had been inspected by an immigration officer. As to this statutory duty, there is no requirement of notice.

That is, subsection (d) of section 273 of the Immigration and Nationality Act sets up a specific procedure for dealing with alien stowaways and provides a fine of $1,000 for:

(1) Failure to detain them on board until they have been inspected by an immigration officer;

(2) Failure to detain them on board after inspection, if ordered to do so; or

(3) Failure to deport them on the vessel on which they arrived or on another vessel of the same line.

(*Matter of SS. Saint Tropez*, 7 I. & N. Dec. 500 (B.I.A., 1957).)

The absolute statutory duty to detain, without notice, arising under subsection (1), *supra*, applies in the present situation, and we have consistently held that the absolute duty exists despite lack of knowledge of the stowaways' presence aboard until their apprehension ashore (*Matter of SS. Monte Monjuich*, 5 I. & N. Dec. 601). The prior decisions of this Board relied upon by the carrier (*Matter of SS. Maria Theresa*, F-0414/19, May 22, 1956, unreported; and *Matter of SS. Morning Light*, 7 I. & N. Dec. 280), are not controlling here for the reason that the stowaways had been inspected and ordered detained on board, so that the fine proceedings in those cases were based on subdivision (2) of section 273(d) and not, as here, subsection (1) thereof. In other words, this case is predicated on a subsection of the law placing on the parties here sought to be charged with liability an absolute duty to detain the stowaways aboard the vessel, without more.

For the reasons set forth in the foregoing paragraph, there is no validity to the claim of failure on the part of the Service to conform to the requirements of 8 CFR 6.1(g) which, in substance, provide that prior precedent decisions of this Board shall be binding in matters such as this. Nor is there, on the record before us, any basis for the claim of failure on the part of the Service to comply with the terms of 8 CFR 292.4(b) requiring permission to review the record by the interested parties. It is established on the record, and conceded, that the responsible parties failed, at the outset, to take advantage of their right to an "interview" under 8 CFR 280.12, but that such privilege was subsequently granted, upon request. Under the circumstances, and upon careful consideration of the entire record, we find that the Service has herein complied with the provi-

sions of 8 CFR 280 which control the imposition and collection of fines.

Finally, we find no fatal defect, as alleged, in that notice of intention to fine (Form I-79) was served on the vessel's master and the Port Arthur Shipping Corporation, as agents, whereas the penalty has been ordered imposed on the Port Arthur Steamship Agency. In the first place, and as a practical matter, it is established and conceded that the fine would still lie against the master since the notice of intention to fine was, in fact, addressed to and acknowledged by him. Secondly, and technically, as a result of the service of notice of intention to fine, a protest thereto submitted to the Service was signed by the manager of the Port Arthur Shipping Agency with no claim of improper service, so that it would appear that the parties here sought to be charged with responsibility were on proper notice and that it is now too late to raise the issue of erroneous service. Thirdly, and the determining factor here, is that the evidence of record establishes proper service.

The notice of intention to fine (Form I-79) was receipted by an R——L——E, for the Port Arthur Shipping Corporation. The fact that the Port Arthur Steamship Agency then protested is a clear indication of the propriety of his acknowledgment. More important, however, is the fact that, as established by the documents submitted in support of this motion by counsel, a person who is shown therein as an owner, operator, and director of the legal entities in question has indicated that the service was proper. In a letter dated January 27, 1959, to the officer in charge of the Service station at Port Arthur, Texas, R——F—— stated the following:

(1) The Port Arthur Steamship Agency is an operating division of the Port Arthur Shipping Corporation. No separate offices are maintained and neither is a partnership. Port Arthur Shipping Corporation, as the name implies, is a corporation, and the Port Arthur Steamship Agency is an operating division of the corporation, not a separate legal entity.

(2) A bond or other undertaking of the Port Arthur Shipping Corporation is intended to bind the Port Arthur Steamship Agency.

(3) An act of an employee of the Port Arthur Steamship Agency is also an act of an employee of the Port Arthur Shipping Corporation.

(4) R——L——E—— is an employee of the Port Arthur Shipping Agency and also an employee of the Port Arthur Shipping Corporation.

Finally, the question of reduction of the amount of the penalty has been adequately dealt with in prior decisions. Suffice it to say that none is permitted under the statute, despite the master's cooperation (*Matter of SS. Monte Monjuich, supra*).

**Order:** It is ordered that the motion be and the same is hereby denied.