# MATTER OF M/V SARU MERU

## In Fine Proceedings

## NOL 900002

### *Decided by Board October 19, 1992*

(1) Fine liability under section 273(d) of the Immigration and Nationality Act, 8 U.S.C. § 1323(d) (1988), is absolute for bringing a stowaway to the United States and failing to detain him until he has been inspected by an immigration officer, even when the carrier did not know about the stowaway until after he was apprehended ashore.

(2) There is no provision for mitigation of fines imposed under section 273(d) of the Act.

(3) The Immigration and Naturalization Service can refrain from instituting fine proceedings, but that is a matter of prosecutorial discretion over which the Board of Immigration Appeals has no jurisdiction.

(4) The Service's Operations Instructions are not binding on the Board, but the Board can adopt the policies that are manifested in the Operations Instructions, which it has done with respect to Operations Instructions 273.1 requiring the Service to secure affidavits to support the record for fine proceedings under section 273(d) of the Act.

(5) In cases where there is doubt about whether a carrier has brought stowaways to the United States and permitted them to land illegally, the Service has the burden of proof to establish those facts with persuasive evidence.

BASIS FOR FINE: Act of 1952—Sec. 273(d) [8 U.S.C. § 1323(d)]—Failed to detain alien stowaways

ON BEHALF OF CARRIER:
Derek A. Walker, Esquire
Chaffe, McCall, Phillips, Toler & Sarpy
2300 Energy Centre
1100 Poydras Street
New Orleans, Louisiana 70163-2300

ON BEHALF OF SERVICE:
David M. Dixon
Appellate Counsel

BY: Milhollan, Chairman; Dunne, Morris, Vacca, and Heilman, Board Members

In a decision dated February 12, 1990, the National Fines Office Director imposed administrative fines totalling $3,000 on the carrier for three violations of section 273(d) of the Immigration and Nationality Act, 8 U.S.C. § 1323(d) (1988), and denied a request from the carrier for mitigation of the fine amounts. The carrier has appealed. The appeal will be sustained.

On September 27, 1989, the carrier arrived at the port of New Orleans, Louisiana, after a voyage from Puerto Cabello, Venezuela.

The carrier's crew was inspected by an immigration officer on the morning of the ship's arrival. The shipmaster told the immigration officer that there were no stowaways on the ship. Later that morning, after the immigration officer had left the carrier's ship, the master discovered the presence of a stowaway on the ship. The master contacted the United States Border Patrol to report that a stowaway had been found on the ship. By the time the Border Patrol agent had reached the ship, five more stowaways had been discovered. The stowaways said that they had not received assistance from crewmen on the ship.

On September 29, 1989, 2 days later, the shipmaster contacted the Border Patrol again to report that some crewmen might have been involved in the stowaway incident and that apparently there were three more stowaways who had not been found. Consequently, the Border Patrol agent who had conducted the stowaway investigation returned to the ship to investigate further. He interviewed the crewmen who were thought to have been involved in the incident. They admitted that they had been paid by the stowaways to assist them in boarding the ship and to provide for their needs during the voyage. Their statements indicated further that three additional stowaways had been on the ship. They explained that these stowaways left the ship when it arrived at the port, and the other six stowaways wanted to wait for some reason before leaving the ship.[1]

On September 27, 1989, a Notice of Intention to Fine under Immigration and Nationality Act (Form I-79) was issued in which it is alleged that the carrier failed to detain the three unidentified alien stowaways as required by section 273 of the Act, and, therefore, that fines totalling $3,000 would be imposed for three violations of that section of the Act.

The carrier responded to the Notice of Intention to Fine in a letter dated January 4, 1990, in which the carrier argues that fines should not be imposed in the circumstances of this case. The carrier also submitted a letter from the Border Patrol agent who conducted the investigations. The letter includes the following statement:

> Suffice it to say that the Master and crew of the vessel as well as the shipping agent, Ernesto Lugo of West Indies Agencies Inc. assisted and cooperated to the greatest degree possible with the United States Border Patrol in the investigation of the incident. Their cooperation and high degree of honesty resulted in the discovery that 3 of the stowaways had escaped the vessel as well as the discovery that organized smuggling had taken place involving a small portion of the crew. It is a fact that without their assistance the investigation of the incident would have been severely

---

[1] This information was taken from reports in the file from the fines officer who investigated the incident and from the Border Patrol agent referred to above.

Interim Decision #3190

handicapped. This level of cooperation from a shipping agent had been virtually unknown to the Border Patrol in New Orleans in this type of case.

In his decision, the National Fines Office Director rejects the carrier's arguments, imposes fines totalling $3,000 for three violations of section 273(d) of the Act, and rejects a request that the carrier had made for mitigation of the fine amounts. The carrier has appealed this decision.

On appeal, the carrier contends that there is insufficient proof in the record to establish that three additional stowaways were on the carrier's ship, or alternatively, if there were additional stowaways, the record does not establish when or where they left the ship. The carrier emphasizes in this regard that it only reported the *possibility* of additional stowaways. The carrier had no knowledge of additional stowaways being on its ship. The existence of the alleged stowaways is supported entirely by hearsay reports of unsworn oral statements taken from the detained stowaways and the crewmen who had assisted the stowaways. The carrier notes in this regard that the Immigration and Naturalization Service was required by its Operations Instructions to take affidavits or sworn statements as support for the imposition of fines under section 273(d) of the Act.

According to the carrier, it is inconsistent with the statute's intent and purpose to impose penalties for failing to detain stowaways in cases such as this one in which the carrier did not know that there were stowaways on its ship. The carrier argues that knowledge is a presupposition to liability for failing to detain stowaways.

The carrier also contends that it was error for the National Fines Office Director to infer that there is no authority to rescind fines simply because such authority is not specified in the statute. The carrier notes that relief from fines in the form of remission can be granted for bringing undocumented aliens to the United States in violation of section 273(a) of the Act. The carrier argues that there is less culpability in the case where a carrier brings a stowaway without knowing of the presence of the stowaway than in the situations involving the bringing of aliens without proper documents. The carrier asserts that there is no basis for believing that Congress would treat one who passively acts in ignorance more harshly than one acting intentionally or in clear disregard of the law. The carrier contends further that Operations Instructions 273.1 makes it apparent that there is discretion on the part of the Service in deciding whether to institute fine proceedings for a section 273(d) violation. The carrier concludes that rescission or mitigation should be granted in the circumstances of this case.

Section 273(d) of the Act sets up a specific procedure for dealing with alien stowaways and provides a fine for (1) failure to detain an

594

alien stowaway on board until the stowaway has been inspected by an immigration officer, (2) failure to detain the stowaway on board after inspection if ordered to do so, or (3) failure to deport the stowaway on the vessel on which he arrived or on another vessel. *See generally Matter of SS. "Saint Tropez,"* 7 I&N Dec. 500 (BIA 1957), for background information on these provisions. The duty imposed by the first of these provisions is absolute. A carrier is liable for violating this duty even if the carrier did not know about the stowaway until after he was apprehended ashore. *Matter of M/V "Giove,"* 8 I&N Dec. 299 (BIA 1959); *Matter of S.S. "Monte Monjuich,"* 5 I&N Dec. 601 (BIA 1954). Consequently, we reject the carrier's argument that knowledge is an element of this type of section 273(d) violation.

We note further that there is no provision for mitigation of fines imposed under section 273(d) of the Act. *Matter of S.S. "Monte Monjuich," supra.* The possibility of including a mitigation provision for section 273(d) of the Act was specifically considered and rejected by Congress. *Id.* Consequently, we reject the carrier's contention that the fine amounts should be mitigated.

The Service could have refrained from instituting fine proceedings in this case, as the carrier has suggested, but that is a matter of prosecutorial discretion over which we have no authority. *See Matter of M/V "Solemn Judge,"* 18 I&N Dec. 186 (BIA 1982); *cf. Matter of Geronimo,* 13 I&N Dec. 680 (BIA 1971).

We agree, however, with the carrier's contention that the record does not adequately support the finding that there were three additional stowaways who made a landing before the immigration inspection. We emphasize in this regard that the record does not contain affidavits from the six stowaways who were caught or from the crewmen who apparently had helped the stowaways, and, as the carrier has claimed, the Service was required by its own Operations Instructions to secure such affidavits. Operations Instructions 273.1 provides as follows:

> When a detained-on-board stowaway has absconded or a landed stowaway is encountered, and the vessel on which the stowaway arrived is still in port, efforts shall be made to secure a sworn affidavit or statement from the master or other responsible ship's officer attesting to the facts in the case. An appropriate report, together with any affidavits secured, shall be referred to Travel Control for consideration of fine proceedings and *to support the record if fine proceedings are instituted. If the stowaway is located, a similar affidavit shall be obtained from* the stowaway and furnished to the Travel Control office having jurisdiction over the institution of fine proceedings with a copy of any report prepared. (Emphasis added.)

The Service's Operations Instructions are not binding in proceedings before this Board. *See Matter of Cavazos,* 17 I&N Dec. 215 (BIA 1980). Nevertheless, the policies that they manifest can be adopted by

the Board. *Id.* Moreover, compliance with this instruction would have been particularly helpful in the circumstances of this case. The immigration officer who inspected the carrier's crew did not see any stowaways other than the six who were found initially. The Border Patrol agent who investigated the incident did not see them either; and neither did the carrier or any of its officers. The only people who even claim to have seen additional stowaways are the six stowaways who were caught[2] and the crewmen who had assisted the stowaways, and we do not have a written record of what these people said about the presence of additional stowaways on the voyage or about when the alleged stowaways left the ship. The only information we have about their statements is what we have been told by the government officials who interviewed them. This makes it very difficult for us to evaluate the credibility or the accuracy of their statements.

In cases such as this one, in which there is doubt about whether a carrier has brought stowaways to the United States and permitted them to land illegally, we have placed the burden of proof on the Service to establish those facts with persuasive evidence. For instance, in *Matter of SS. Yarmouth*, 8 I&N Dec. 675 (BIA 1960), where the fine liability was based solely on the stowaway's statement, which had been contradicted by statements from the carrier's crew, we found that the Service had not met its burden of proof. We noted in that case that the Service had made no effort to substantiate the stowaway's claim by inspecting the carrier's ship or by interrogating the stowaway about the ship's description. By comparison, in *Matter of S.S. "Monte Monjuich,"* supra, the Service continued to investigate the claims from stowaways that they had come to the United States aboard a particular ship until persuasive evidence was produced. When they took the stowaways to the ship, one of them led the Service inspector directly to the part of the ship that the stowaways had used for the voyage. The stowaway took the inspector to an escape hatch and down into an area where physical evidence was found that corroborated the claim that they had come to the United States aboard this ship. This evidence included such things as sardine cans, Portuguese tobacco wrappers, a Portuguese coin, a man's dirty handkerchief, and excrement. In that case, we concluded that a violation of the statute had been established.

We find that the Service has not met its burden of proof in the present case. It is possible that there were three additional stowaways aboard the carrier's ship who made a landing in the United States before the immigration inspection, but the Service has not produced persuasive evidence to prove those allegations. While hearsay evidence is acceptable in fine proceedings, it is subject to some doubt,

---

[2] It is not clear what, if anything, these stowaways said.

particularly in cases such as the present one in which the Service was required by internal Operations Instructions to take affidavits from witnesses. Consequently, we conclude that the Service has failed to establish that the carrier brought three additional stowaways to the United States who made a landing prior to the immigration inspection. The carrier's appeal will therefore be sustained.

Accordingly, the following orders will be entered.

**ORDER:** The carrier's appeal is sustained.

**FURTHER ORDER:** The fines imposed upon the carrier by the National Fines Office Director are cancelled, and the proceedings against the carrier are terminated.