Santana **NAVARRO–AISPURA,** Petitioner,

v.

**IMMIGRATION AND NATURALIZATION SERVICE,** Respondent.

No. C–93–1630–DLJ.

United States District Court, N.D. California.

Dec. 6, 1993.

Alberto E. Gonzalez, Sp. Asst. U.S. Atty., San Francisco, CA, appeared on behalf of respondent.

Jonathan Scop, San Francisco, CA, appeared on behalf of petitioner.

### ORDER

JENSEN, District Judge.

Petitioner seeks habeas corpus review of a Board of Immigration Appeals' ["BIA"] order of exclusion. On November 24, 1993, the Court heard respondent's motion for summary judgment. Alberto E. Gonzalez, Special Assistant United States Attorney, appeared on behalf of respondent. Jonathan Scop appeared on behalf of petitioner. Having considered the papers submitted, the applicable law, the arguments of counsel, and the entire record herein, the Court DENIES respondent's motion for summary judgment and GRANTS petitioner's request for writ of habeas corpus for the following reasons.

### I. BACKGROUND

Petitioner is a fifty-five year old native and citizen of Mexico who first entered the United States without inspection in 1957. Petitioner has made numerous trips to and from Mexico since his first entry, and has re-entered the United States each time without inspection. Petitioner has resided in the United States continuously since 1971.

Petitioner works as a baker, and has been a member of the local bakery and confectionery union since 1971. He is currently employed full-time as a baker for Safeway Stores in Sunnyvale, CA, and has also worked for Adeline Bake Shop of San Francisco and Golden Crescent Bakery in Palo Alto.

On March 7, 1985, petitioner was apprehended by the INS while he was at work at the Pisano French Baking Company in Redwood City. Petitioner accepted administrative voluntary return to Mexico without a hearing, and was returned to Mexico the same day. At that time petitioner was living in San Francisco with his brother. Petitioner did not intend to abandon his residence or job in the United States, but instead planned to return in two weeks after visiting family in Mexico.

Petitioner contracted tuberculosis in Mexico, and was unable to return to San Francisco as planned. Petitioner reentered the United States without inspection nineteen months later, in October 1986. Petitioner returned to his former residence in San Francisco and resumed work with Adeline Bake Shop.

On March 11, 1988 petitioner submitted an application for "registry," with INS pursuant to INA § 249 (8 U.S.C. § 1259).[1] Petitioner

---

1. INA § 249 provides that "a record of lawful admission for permanent residence may, in the discretion of the Attorney General and under such regulations as he may prescribe" be made if an alien entered the United States prior to January 1, 1972, has resided continuously in the United States since such entry, and is not ineligible for citizenship.

An application for registry is distinct from an application for "adjustment of status." An alien who enters the United States may apply for adjustment to permanent resident. 8 C.F.R. § 235.1(a). A grant of adjustment of status does

submitted his application without the assistance of counsel.

Over two years later petitioner's application for registry was still pending. Petitioner needed to return to Mexico briefly to assist his mother in property transactions. Although he had made numerous trips to and from Mexico previously without inspection, petitioner contacted the INS before leaving so that he could make the journey under lawful procedures.

On July 2, 1990 the INS district director granted petitioner advance parole[2] and issued him a Form I–512. The Form I–512 given petitioner contained the following statement in the "Remarks" section:

> If your application for Adjustment of Status is denied, you will be subject to **exclusion proceedings,** under Section 236 of the Immigration and Nationality Act. Individual is to be paroled into the United States for an indefinite period of time providing prima facie eligibility for adjustment of status continues.

(emphasis added)

Petitioner accepted the grant of advance parole without guidance of counsel, and without advisement by INS officials about exclusion, deportation, or the consequences of accepting advance parole.

Petitioner spent two months in Mexico, and was paroled into the United States in September, 1990. On August 9, 1991, the district director denied petitioner's application for registry due to his nineteen month absence from the country in 1985–1986. Petitioner's parole was subsequently revoked and the INS commenced exclusion proceedings against him, rather than deportation proceedings, which normally follow an administrative denial of registry.[3]

In the exclusion proceeding, petitioner admitted that he was an intending immigrant

not in possession of a valid immigrant visa. However, petitioner challenged the nature of the proceedings. The IJ found that petitioner was properly in exclusion proceedings and charged him with excludability under INA § 212(a)(7)(A)(i)(I).

The IJ also found that petitioner was in exclusion rather than in deportation proceedings only because he had previously been issued advance parole. The IJ allowed petitioner to renew his application for registry in the exclusion hearing, and granted petitioner registry.

The INS appealed the IJ's authority to grant registry in an exclusion proceeding. On March 30, 1993 the BIA reversed, ordering petitioner excluded and deported. Petitioner filed this petition for writ of habeas corpus on May 3, 1993. On August 13, 1993 respondent moved for summary judgment.

## II.  DISCUSSION

### A.  *Jurisdiction*

Petitioner filed this petition for habeas corpus review of his exclusion order within the time specified by statute. 8 U.S.C. § 1105a(a)(1). Petitioner has exhausted his administrative remedies, and jurisdiction is proper under 8 U.S.C. § 1105a(c).

### B.  *Standard Of Review*

■  Factual findings underlying a BIA decision are reviewed under the substantial evidence standard. *I.N.S. v. Elias Zacarias,* —— U.S. ——, ——, 112 S.Ct. 812, 815, 117 L.Ed.2d 38 (1992); *Desir v. Ilchert,* 840 F.2d 723, 726 (9th Cir.1988). Respondent argues that the substantial evidence standard should apply in this instance.

■  The parties raise no contested issues of fact. Petitioner's claim is based on statutory interpretation and application. "Where

---

not require that the alien have completed a period of continuous residency, as does a grant of registry.

**2.** Advance parole is an administrative device based in INA § 212(d)(5) (8 U.S.C. § 1182(d)(5)) which allows an alien to enter the United States temporarily for emergency reasons or for reasons in the public interest.

**3.** "The deportation hearing is the usual means of proceedings against an alien already physically in the United States, and the exclusion hearing is the usual means of proceedings against an alien outside the United States seeking admission." *Landon v. Plasencia,* 459 U.S. 21, 25, 103 S.Ct. 321, 325, 74 L.Ed.2d 21 (1982).

... the agency determinations turn on purely legal questions concerning the requirements of the applicable statutes, '[t]he questions ... are questions of law, which we review de novo.'" *Desir,* 840 F.2d 723, 726 (quoting *Lazo–Majano v. INS,* 813 F.2d 1432, 1434 (9th Cir.1987)). Petitioner therefore correctly requests de novo review. *Id.* Strong deference is provided, however, to an agency's interpretation of a statute. *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843–44, 104 S.Ct. 2778, 2781–83, 81 L.Ed.2d 694 (1984).

### C. Summary Judgment

Because there is no issue of material fact presented, the Court on summary judgment may make a determination of the legal issues presented. *See Edwards v. Aguillard,* 482 U.S. 578, 107 S.Ct. 2573, 96 L.Ed.2d 510 (1987) (interpretation of statute made on motion for summary judgment).

### D. Petition For Habeas Review

Petitioner characterizes his claims as arising from the lack of any explicit authority addressing the case of an alien granted advance parole while awaiting a determination of registry. Petitioner argues that his situation was not contemplated by Congress or the INS, and asks the Court to interpret the applicable regulations in a logical manner so as to avoid an unjust and harsh result. Petitioner submits that the "gap" should be filled in his favor by either allowing petitioner to have a deportation hearing, or allowing the IJ to use his discretion to remedy this unique situation. Petitioner also claims violations of equal protection.

The Court finds that summary judgment must be denied, and writ of habeas corpus granted, for reasons other than those presented by petitioner. The Court therefore does not address the merits of petitioner's contentions, but rests its holding on the following analysis.

### 1. Significance of Exclusion and Deportation Hearings

Exclusion hearings and deportation hearings are the two types of proceedings in which aliens may be denied access to the United States.[4] *Landon v. Plasencia,* 459 U.S. 21, 22, 103 S.Ct. 321, 323, 74 L.Ed.2d 21 (1982). Of the two proceedings, deportation hearings afford more procedural and substantive rights to an alien, and are therefore more desirable to the alien. *Id.* 459 U.S. at 26–27, 103 S.Ct. at 325–26.

The two types of proceedings are different in a number of ways. Exclusion hearings are generally held in the cases of aliens who are seeking entry from outside the United States, and are therefore typically held at the port of entry. *Id.* 459 U.S. at 26, 103 S.Ct. at 325. Deportation hearings are used to proceed against aliens already physically in the United States, and the hearing is usually held near the alien's residence. *Id.* Deportation hearings provide procedural rights to the alien, such as notice of charges and direct appeal, that are not available in exclusion hearings. *Id.* 459 U.S. at 26–27, 103 S.Ct. at 325–26.

Significant to petitioner, an alien in a deportation hearing may renew an application for registry. 8 C.F.R. § 249(a). Although an alien in exclusion proceedings is allowed to renew an application for adjustment of status, the regulations governing exclusion proceedings do not address an alien's right to renew an application for registry. 8 C.F.R. § 236.4.

Finally, an alien who loses his right to live in the United States following a deportation hearing is afforded a number of substantive rights that are not available to the alien who is denied admission in an exclusion proceeding. *Id.* 459 U.S. at 27, 103 S.Ct. at 326.

### 2. Authority Of The District Director

■ District directors are under the governance of their regional commissioners, and are delegated the authority to grant or deny any application or petition submitted to the

---

**4.** Exclusion hearings are governed by 8 C.F.R. § 236 *et seq.* Deportation hearings are governed by 8 C.F.R. § 242 *et seq.*

INS except for those matters delegated to asylum officers. 8 C.F.R. § 103.1(n)(1). A district director may also commence deportation proceedings against an alien by filing an order to show cause. 8 C.F.R. § 242.1(a)(1). Accordingly, it is within the authority of a district director to deny an alien's application for registry and subsequently initiate deportation proceedings against that alien.

The district director's authority to grant or deny applications also encompasses applications for advance parole. Advance parole is a device that does not have a direct statutory basis in the INA, but which has evolved from INA § 212(d)(5) (8 U.S.C. § 1182(d)(5)). Section 212(d)(5) allows an alien to be paroled into the United States temporarily for emergency reasons or for reasons in the public interest. Advance parole is described as a "process which permits certain aliens who are in the United States in temporary status to obtain permission for a brief absence." Charles Gordon and Stanley Mailman, *Immigration Law and Procedure*, § 6402, at 64–10 (rev. ed. 1991).

After the purpose for which parole was authorized is accomplished, the district director may determine that neither emergency nor public interest warrants the alien's continued presence in the United States and terminate the alien's parole. When parole is terminated, the alien is "restored to the status which he or she had at the time of parole." 8 C.F.R. § 212(d)(2)(i). Section 212(d)(2)(i) also states that "[a]ny further inspection or hearing shall be conducted under section 235 or 236 of the Act" (exclusion proceedings).

Advance parole, is a device that, by its very language, anticipates application to aliens who have recently entered the United States and have applied for adjustment of status. That an alien may renew an application for adjustment of status in an exclusion proceeding supports this interpretation. 8 C.F.R. § 245.2(a). In addition, the regulations governing applications for adjustment of status state that an alien who has applied for adjustment of status, and who was granted advance parole and inspected upon return, is subject to exclusion proceedings, not deportation. 8 C.F.R. § 245.2(a)(4)(ii).

In most situations, therefore, a district director's grant of advance parole to an alien does nothing to change that alien's status because the alien was subject to exclusion proceedings in the first place. Petitioner's situation, however, is significantly different. According to the BIA analysis, the district director's discretionary grant of parole changed petitioner's status as a deportable alien to that of an excludable alien, and eliminated his right to deportation proceedings.

The regulations do not address a situation such as petitioner's, in which a long-time resident of the United States is given a grant of advance parole pending the outcome of his application for registry. As already indicated, respondent maintains that the district director's discretionary grant of advance parole converted petitioner's status to that of an excludable alien. However, respondent cites to no authority, and the Court finds none, which permits a district director to arbitrarily require an alien subject to deportation to go through exclusion proceedings instead. The advance parole documents issued by the district director in this case do, in fact, expressly limit any further proceedings to exclusion proceedings, but it is clear that this thoroughly inequitable situation was not agreed to by the petitioner. More importantly, the district director cannot use the administrative convenience of the advance parole procedure to exercise authority he does not have. It is apparent than that this use of advance parole is beyond the authority conferred upon the district director.

Accordingly, the Court finds that petitioner's placement in exclusion proceedings was outside the authority of the district director. Any further adjudication of petitioner's status must be conducted in deportation proceedings.

### III. CONCLUSION

For the foregoing reasons, the Court ORDERS the following:

1. Respondent's motion for summary judgment is DENIED.

2. Petitioner's writ for habeas corpus review is GRANTED.

IT IS SO ORDERED.