Santana **NAVARRO–AISPURA,**
Petitioner–Appellee,

v.

**IMMIGRATION & NATURALIZATION SERVICE,** Respondent–Appellant.

No. 94–15277.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 13, 1994.

Decided March 20, 1995.

Alberto E. Gonzalez, Asst. U.S. Atty., San Francisco, CA, for respondent-appellant I.N.S.

Jonathan Scop, San Francisco, CA, for petitioner-appellee Navarro–Aispura.

Before SKOPIL, NORRIS, and HALL, Circuit Judges.

SKOPIL, Senior Circuit Judge:

We consider in this appeal whether an illegal alien who travels temporarily outside the United States with permission from the Immigration and Naturalization Service (INS) loses his right to a deportation hearing upon the subsequent denial of his application for registry filed pursuant to 8 U.S.C. § 1259. We agree with the district court that under the circumstances of this case the alien was entitled to a deportation hearing. We affirm.

## FACTS AND PRIOR PROCEEDINGS

Santana Navarro–Aispura (petitioner) is a fifty-six year old native and citizen of Mexico. He first entered the United States unlawfully in 1957. He concedes that he made numerous trips to and from Mexico since his first entry, always reentering the United States unlawfully. Petitioner was apprehended by INS in 1985. He accepted voluntary departure and was returned to Mexico. Petitioner intended to return to the United States after visiting his family in Mexico. Instead, he contracted tuberculosis in Mexico and did not return until nineteen months later.

In 1988, petitioner applied to INS for a discretionary grant of registry pursuant to 8 U.S.C. § 1259. The statute provides for amnesty and permanent residency status for aliens who entered the United States prior to 1972, have resided continuously in the United States since entry, are of good moral character, and are not otherwise ineligible for citizenship. While his application for registry was pending, petitioner sought permission from INS to travel briefly to Mexico to assist his mother with some property transactions. INS granted petitioner "advance parole," which allowed him to travel briefly outside the United States and to reenter lawfully.

Petitioner was allowed to reenter upon his return. Nearly one year later, his application for registry was denied by INS due to his nineteen month absence in 1985–1986. INS thereafter commenced exclusion proceedings. An Immigration Judge (IJ) determined that petitioner was placed in exclusion proceedings rather than deportation proceedings solely because petitioner had been granted advance parole. The IJ reversed INS's denial of registry, finding that petitioner's nineteen month absence did not breach the continuous physical presence requirement.

The Board of Immigration Appeals (BIA) reversed, first rejecting petitioner's claim that he was entitled to deportation proceedings: "we conclude that where an advance parolee in the applicant's situation, *i.e.,* an applicant for registry, returns to the United States and his application is subsequently denied, exclusion proceedings constitute the appropriate forum in which to determine his right to enter the country." BIA further concluded that the IJ did not have jurisdiction to consider petitioner's registry claim, reasoning that 8 C.F.R. § 249.2(b) provides for administrative review of the denial of registry only in deportation proceedings.

The district court reversed BIA's decision. The court concluded that INS could not subject petitioner to exclusion proceedings based on the prior grant of advance parole. *Navarro–Aispura v. INS,* 842 F.Supp. 1225, 1228–29 (N.D.Cal.1993). The court ordered that "[a]ny further adjudication of petitioner's status must be conducted in deportation proceedings." *Id.* at 1229.

## DISCUSSION

There is no question that but for the grant of advance parole, petitioner would

have been subject to deportation rather than exclusion upon denial of his registry application. There is also no question that deportation proceedings afford greater procedural and substantive rights to an alien than do exclusion proceedings. *See Landon v. Plasencia,* 459 U.S. 21, 25–27, 103 S.Ct. 321, 325–26, 74 L.Ed.2d 21 (1982) (contrasting deportation and exclusion proceedings); *Patel v. Landon,* 739 F.2d 1455, 1457 (9th Cir. 1984) (same). The principle distinction between deportation and exclusion for the purpose of this case is that administrative review of the denial of registry occurs only in deportation proceedings. *See* 8 C.F.R. § 249.2(b).

■ Advance parole is an administrative procedure derived from application of 8 U.S.C. § 1182(d)(5). It provides the Attorney General with discretion to grant aliens temporary entry to the United States "for emergent reasons or for reasons deemed strictly in the public interest." 8 U.S.C. § 1182(d)(5). INS also utilizes advance parole to permit aliens to leave the country and to reenter lawfully without jeopardizing pending applications for discretionary relief.

INS has long asserted that when aliens are granted advance parole, and then depart and reenter the country, they lose their right to have their status determined in deportation proceedings. We rejected that assertion, however, in *Patel,* 739 F.2d at 1457–58. We concluded that INS's policy conflicted with 8 C.F.R. § 245.2(a)(3) (1984), which provided that authorized, temporary absences cannot jeopardize an alien's pending application for an adjustment of status.

INS amended section 245.2(a) in response to *Patel* and to *Joshi v. INS,* 720 F.2d 799, 801–02 (4th Cir.1983) (following grant of advance parole, BIA erred in adjudicating petitioner's application for adjustment of status in exclusionary proceedings). *See* 51 Fed. Reg. 7431 (March 4, 1986). The amended regulation, recodified as 8 C.F.R. § 245.2(a)(4)(ii), now provides that "[i]f the application of an individual granted advance parole is subsequently denied, the applicant will be subject to the exclusion provisions of section 236 of the Act. No alien granted advance parole and inspected upon return

shall be entitled to a deportation hearing." 8 C.F.R. § 245.2(a)(4)(ii).

■ INS asserts that this change in the regulation authorizes the use of exclusion proceedings for any alien who has been granted advance parole. We disagree. The district court correctly reasoned that section 245.2(a)(4)(ii) applies only to aliens seeking adjustment of status, not to those seeking registry. *Navarro–Aispura,* 842 F.Supp. at 1229. Application of the regulation to an alien seeking adjustment of status is appropriate because, as the district court noted, "[i]n most situations ... a district director's grant of advance parole to an alien does nothing to change that alien's status because the alien was subject to exclusion proceedings in the first place." *Id.* There is no sound reason, however, to apply the regulation to an alien who has been denied registry. Petitioner was clearly entitled to deportation proceedings upon denial of his registry application but for his authorized, temporary trip to Mexico. The district court is correct that the regulation at issue can not be reasonably interpreted to "address a situation such as petitioner's, in which a long-time resident of the United States is given a grant of advance parole pending the outcome of his application for registry." *Id.*

■ INS contends that we are obligated to defer to its interpretation and application of the law. *See Mendoza v. INS,* 16 F.3d 335, 337 (9th Cir.1994) (courts must give "considerable deference" to BIA's interpretation). We are not obligated, however, to accept an agency's interpretation that is "demonstrably irrational or clearly contrary to the plain and sensible meaning of the statute." *Senica v. INS,* 16 F.3d 1013, 1016 (9th Cir.1994). *See also Montecino v. INS,* 915 F.2d 518, 520 (9th Cir.1990) (BIA's interpretation must be rejected if it is arbitrary). The district court here reasoned that the agency's interpretation permitted the district director arbitrarily to require an alien otherwise subject to deportation to go through exclusion proceedings. *Navarro–Aispura,* 842 F.Supp. at 1229. We conclude that whatever deference is owed to the agency is overcome by the lack of a rational explanation for the agency's decision to impose sec-

tion 245.2(a)(4)(ii) on an alien denied registry, when the regulation on its face clearly applies only to adjustments of status.

INS contends that *Plasencia*, 459 U.S. at 28, 103 S.Ct. at 326–27, compels a different outcome. We disagree. In *Plasencia*, a permanent resident alien was denied admission upon returning to the United States, when she was apprehended attempting to smuggle illegal aliens. The Court concluded that the Immigration and Nationality Act authorizes INS to adjudicate the admissibility of all aliens seeking to reenter the United States in exclusion proceedings regardless of their status. *Id.* at 27–28, 103 S.Ct. at 326–27. Petitioner in this case also could have been subjected to exclusion proceedings when he sought to reenter the United States as an advance parolee. Clearly, had there been evidence of criminal conduct at the time of his reentry, INS would have instituted exclusion proceedings, as in *Plasencia*. Here, however, petitioner was admitted rather than excluded, and his application for registry remained pending for nearly another year.

■ Finally, INS argues that petitioner received adequate notice that if he accepted advance parole he would be subject to exclusion proceedings. Petitioner signed a form stating that "[if] your application for Adjustment of Status is denied, you will be subject to exclusion proceedings under section 236 of the Immigration and Nationality Act. Individual is to be paroled into the United States for an indefinite period of time providing prima facie eligibility for adjustment of status continues." The district court deemed this notice inadequate to impose exclusion proceedings on petitioner because "this thoroughly inequitable situation was not agreed to by the petitioner." *Navarro–Aispura*, 842 F.Supp. at 1229. We agree. The notice repeatedly refers to adjustment of status, whereas petitioner was involved in a pending registry proceeding. Assuming petitioner understood the form at all, he might reasonably have assumed that the warning did not apply to him, since he was not applying for adjustment of status. *See Joshi*, 720 F.2d at 802–03 ("garbled" and "unintelligible" advance parole form did not give notice to adjustment of status applicant that he would

be subject to exclusion proceedings upon return to United States).

## CONCLUSION

We conclude that petitioner should not have been subjected to exclusion proceedings. Any further proceedings before INS should be in deportation proceedings. We decline petitioner's request that we review the IJ's grant of registry. Neither BIA nor the district court reached that issue.

**AFFIRMED.**