# In re Sukwinder SINGH, Applicant

*Decided June 14, 1996*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

A returning applicant for legalization under section 245A of the Immigration and Nationality Act, 8 U.S.C. § 1255a (1988 & Supp. III 1991), may not, by virtue of his membership in the class action suit of *Catholic Social Services v. Meese*, 685 F. Supp. 1149 (E.D. Cal. 1988), *aff'd sub nom. Catholic Social Services v. Thornburgh*, 956 F.2d 914 (9th Cir. 1992), *vacated sub nom. Reno v. Catholic Social Services*, 509 U.S. 43 (1993), successfully file a motion to terminate exclusion proceedings based on the doctrine set forth in *Rosenberg v. Fleuti*, 374 U.S. 449 (1963).

Pro se[1]

FOR IMMIGRATION AND NATURALIZATION SERVICE: Wendi Lazar, General Attorney

BEFORE: Board En Banc: DUNNE, Vice Chairman; VACCA, HEILMAN, HOLMES, HURWITZ, VILLAGELIU, COLE, MATHON, and GUENDELSBERGER, Board Members. Concurring and Dissenting Opinion: ROSENBERG, Board Member.

DUNNE, Vice Chairman:

In a decision dated December 13, 1994, an Immigration Judge granted the applicant's motion to terminate exclusion proceedings based upon her decision that the applicant had made a brief, casual, and innocent departure from the United States. The Immigration and Naturalization Service filed a timely appeal from that decision. The appeal will be sustained and the record will be remanded to the Immigration Court.

## I. PROCEDURAL HISTORY

The applicant is a native and citizen of India. The record indicates that he originally entered the United States without inspection in 1980. The applicant contends, and the Service does not dispute, that in 1991, the applicant applied for adjustment of status under section 245A of the Immigration and Nationality Act, 8 U.S.C. § 1255a (1988 & Supp. III 1991). While his application was pending, the applicant departed for India without securing

---

[1] The applicant received representation at the hearing.

advance parole as required under 8 C.F.R. § 245a.2(m)(1) (1991). On April 15, 1994, the applicant applied for admission into the United States. The record reflects that upon arrival, the applicant presented himself for inspection and confessed to immigration officials that he possessed a fraudulent passport. On April 16, 1994, the Service served the applicant with a Notice to Applicant for Admission Detained for Hearing Before Immigration Judge (Form I-122), alleging that he is inadmissible due to his alleged fraud and lack of proper immigration documents.

At an exclusion hearing held October 27, 1994, the applicant requested leave to file a motion to terminate proceedings based upon the Supreme Court's decision in *Rosenberg v. Fleuti*, 374 U.S. 449 (1963). The Immigration Judge continued the hearing until December 13, 1994, at which time she considered the applicant's motion. In his motion, the applicant argued that, due to his status as a lawful temporary resident applicant with a designation of subclass CS1, he should not be found excludable because his departure to India was brief, casual, and innocent. At the hearing, the Immigration Judge took testimony regarding the nature of the applicant's departure from the United States. At the conclusion of the hearing, the Immigration Judge determined that the applicant's trip to India did constitute a brief, casual, and innocent departure pursuant to *Rosenberg v. Fleuti, supra*. She therefore terminated the proceedings.

## II. THE SERVICE'S APPEAL

On appeal, the Service argues that the Immigration Judge did not have the authority to terminate the applicant's exclusion proceedings under the *Fleuti* doctrine. Alternatively, the Service argues that the applicant's departure does not fall within the ambit of *Rosenberg v. Fleuti, supra*. Because we agree with the Service's initial argument, we will not analyze whether the applicant's departure constituted a brief, casual, and innocent departure from the United States.

## III. RELEVANT LEGAL HISTORY

In order to address the Service's appellate contentions, we must first examine the statutory and regulatory provisions regarding section 245A legalization applicants. We stress, however, that while the applicant claims entitlement to a *Fleuti* determination due to his status as a legalization applicant, we have no authority to consider the applicant's eligibility for legalization. *See* section 245A(f) of the Act. By statute, Congress has prevented us from even reviewing his legalization file. *See* sections 245A(c)(4), (5) of the Act; *see also* 8 C.F.R. § 245a.2(t) (1995). Our jurisdiction is limited solely to the consideration of the Service's charges of excludability.

## A. Section 245A of the Act

Section 245A of the Act allows an alien to adjust his status to that of an alien lawfully admitted for temporary residence if the alien meets certain requirements, including, but not limited to, his continuous unlawful residence and continuous physical presence in the United States since 1982. *See* section 245A of the Act. Federal regulations further state that an alien must apply for temporary residence "within the twelve month period beginning on May 5, 1987, and ending on May 4, 1988." 8 C.F.R. § 245a.2(a). Subsequent to the institution of the legalization program, various lawsuits arose arguing against the closing of the application period on May 4, 1988. *See, e.g., Catholic Social Services v. Meese,* 685 F. Supp. 1149 (E.D. Cal. 1988), *aff'd sub nom. Catholic Social Services v. Thornburgh,* 956 F.2d 914 (9th Cir. 1992), *vacated sub nom. Reno v. Catholic Social Services*, 509 U.S. 43 (1993) ("CSS"); *League of United Latin American Citizens v. INS*, No. 87-4757-WKD (C.D. Cal. July 15, 1988), *aff'd sub nom. Catholic Social Services v. Thornburgh*, 956 F.2d 914 (9th Cir. 1992), *vacated sub nom. Reno v. Catholic Social Services*, 509 U.S. 43 (1993) ("LULAC"). The district courts in California certified two separate classes for lawsuits (CSS and LULAC); these classes consisted of prima facie eligible applicants who had failed to file applications within the regulatory period.[2] The Eastern District Court thereafter enjoined the Attorney General from excluding class members who had travelled abroad without proper immigration documents. *Catholic Social Services v. Reno,* No. Civ. S-86-1343 LKK (E.D. Cal. Apr. 28, 1993).

## B. The District Court's Injunction

More specifically, the court in *Catholic Social Services v. Reno, supra*, slip op. at 7, ordered that the Attorney General of the United States, her agents and employees

> shall not detain, exclude or deport any subclass 1 member applicant solely because he or she departed the United States without INS permission (advance parole) and returned after a "brief, casual and innocent" absence. . . . Any subclass 1 members held in detention solely

---

[2] Both class action suits were filed on behalf of applicants who had departed the United States after 1982 and who thereafter appeared ineligible for legalization due to these absences from the country. Specifically, the litigation surrounding the district court's injunction in CSS and the Service's May 18, 1993, policy relates to 8 C.F.R. §§ 245a.2(g) and (b)(8), regarding the "continuous unlawful residence" and "continuous physical presence" requirements necessary to demonstrate eligibility for section 245A relief. The Supreme Court joined these two lawsuits in *Reno v. Catholic Social Services*, 509 U.S. 43 (1993). Therein, the Court found that many class members did not have a ripe claim to relief, and limited the class action to those aliens who could demonstrate that they had been "front-desked"; in other words, such applicants had to demonstrate that they had been discouraged by Service officials from filing a legalization application. We note that none of the litigation thus far addresses 8 C.F.R. § 245a.2(m)(1), which controls the readmission policy for most of the CSS and LULAC applicants currently in exclusion proceedings.

on the basis that they departed from the United States without advance parole shall be immediately released from detention if their absence was otherwise "brief, innocent and casual."

Although the district court specifically stated that the Attorney General may not "exclude or deport" a CS1 member, we do not find this language determinative. We further note that the United States Court of Appeals for the Ninth Circuit decided, subsequent to the district court's injunction, that similar language within the seasonal agricultural worker legalization provisions of the Act did not preclude the initiation of proceedings or the entry of a deportation order. *See Lucy Ko Yao v. INS,* 2 F.3d 317, 319 (9th Cir. 1993).[3] The court further explained that "(t)he order simply may not be executed unless and until an adverse legalization determination is made and is final." *Id*. Inasmuch as the Service retains sole jurisdiction over the execution of such orders, we find that the injunction itself does not define the procedures which the Immigration Judges and this Board should follow in exclusion proceedings of returning CS1 applicants.

## C. Service Policy Regarding Section 245A Applicants

As a result of the injunction, the Service issued a memorandum on May 18, 1993, instructing its officers to cease placing into exclusion proceedings certain CSS class members who had travelled abroad without the protection of advance parole. Pursuant to the order, Service agents were also required to determine to which class action suit an alien belonged. If the alien belonged to the CSS class action suit, the agent was to determine the nature of the applicant's departure from the United States. If the agent found the alien's departure to be "brief, casual, and innocent" as that term has been defined under the immigration laws, the Service directed the officer to parole the alien into the United States for a period of 1 year. Moreover, the directive contained the following provisions:

> Effective immediately, any exclusion proceedings against a CSS class member which commenced solely because the alien sought admission without advance parole are to be terminated and the alien is to be paroled into the United States. . . . However, if the alien's absence was not brief, casual, and innocent, or if the alien is excludable under a non-waivable ground, proceedings and detention may proceed.

70 Interpreter Releases, No. 22, June 7, 1993, at 744. Lastly, the memorandum clearly specified that termination of exclusion proceedings upon a finding of brief, casual, and innocent departures should extend only to CSS class members, and not to any other 245A applicant or class litigant. Specifically, in its May 18, 1993, memorandum, the Service explained that the status of an alien seeking admission as a CSS class member may be checked through its

---

[3] The Ninth Circuit analyzed the phrase in section 210(d)(2)(A) of the Act, 8 U.S.C. § 1160(d)(2)(A) (1988), which provides that an alien "may not be excluded or deported."

Central Indexing System ("CIS"), and "is indicated by the class of admission CS1." *Id.* at 744.

## D. Applicability to Exclusion Proceedings

We have held that while such policy guidelines are not binding on the Board, we will nonetheless adopt a Service policy when appropriate. *See Matter of M/V Saru Meru*, 20 I&N Dec. 592 (BIA 1992); *Matter of Ibrahim,* 18 I&N Dec. 55 (BIA 1981); *Matter of Cazavos,* 17 I&N Dec. 215 (BIA 1980). We have no authority to investigate the motivation behind the Service's policy decisions, but we may use such policy as guidance within the context of our exclusion and deportation powers. Clearly, the Service policy included those applicants who were already in exclusion proceedings, and at the time of the Service's release of this policy memorandum, many of these class members had filed appeals of their exclusion orders. Under these circumstances, we found it appropriate to remand those cases to the Office of the Immigration Judge so that the Service could examine the status of these class members and terminate proceedings in those cases aligned with their May 18, 1993, policy memorandum. We found this to be particularly appropriate in light of the preferential treatment afforded those applicants who had been designated CS1 class members.

Thereafter, we continued to receive appeals from aliens who claimed membership in the CSS class action suit. However, as previously noted, the statute and regulations prevent us from reviewing any information regarding the alien's legalization application. *See* sections 245A(c)(4), (5), (f) of the Act; *see also* 8 C.F.R. § 245a.2(t). The evidence needed to review such claims remained in the exclusive possession of the Service. Thus, in order to insure that the Service followed its policy in individual cases, we began to request that the Service provide a copy of that portion of its Central Indexing System which applied to the alien's designation for class membership. We found this both appropriate and necessary in order to adjudicate the exclusion proceedings in accordance with the Service's May 18, 1993, memorandum.[4] However, due to the regulatory limitations on our access to such information,

---

[4] We recognize the fundamental rule of law that the issuance of a charging document and the institution of exclusion proceedings is within the sole jurisdiction of the Service. Moreover, the burden in exclusion proceedings is ordinarily upon the applicant to establish that he is admissible to the United States. *See* section 291 of the Act, 8 U.S.C. § 1361 (1994); *see also Matter of Nafi,* 19 I&N Dec. 430 (BIA 1987); *Matter of Matelot,* 18 I&N Dec. 334 (BIA 1982). Admittedly, requiring the Service to produce a copy of an alien's CIS printout runs counter to these tenets. Nonetheless, we find that to remain consistent with the Service's May 18, 1993, examine such information in order to thoroughly review an alien's appellate contentions. *See* C.F.R. § 3.1(d) (1995). As we discuss, *infra*, we also find it proper for the Immigration Judge to request submission of such evidence at the hearing.

we have not sought information regarding the methods by which the Service designates the various class members.[5]

## IV. THE APPLICANT'S EXCLUSION HEARING

At the exclusion hearing, the applicant moved to terminate the proceedings on the ground that, due to his status as a lawful temporary resident applicant with a designation of subclass CS1, he should not be found excludable because his departure to India was brief, casual, and innocent. At the hearing, the Immigration Judge took testimony regarding the nature of the applicant's departure from the United States. Specifically, the applicant testified that he originally entered the United States in 1980. He left the United States for approximately 1 month in December of 1987 and reentered without inspection. He testified that in 1991, he applied for adjustment of status under section 245A of the Act. Thereafter, the applicant again departed the United States in December of 1991. He testified that he left the United States without proper documents from the Service, but that the Service told him upon his return that none were necessary due to his status as a CS1 applicant.

On October 15, 1993, the applicant again departed the United States. He inquired about advance parole, but was told by the Service, "You don't need it, because it's CSS-1." The applicant indicated that he left on October 15, 1993, because he received word that his family had been imprisoned. He indicated that Indian officials confiscated his immigration documents and placed him in jail for approximately 4 months due to his work with the All India Sikh Student Federation. He testified that he obtained a valid Indian passport prior to his return to the United States, and that he placed his picture into the passport. Upon returning to the United States on April 15, 1994, the applicant handed his passport to an immigration official and told him that it was invalid.

## V. LEGAL ANALYSIS

Current regulations state that an alien who has a temporary residence application pending "can only be readmitted to the United States provided his or her departure was authorized under the Service's advance parole provisions." 8 C.F.R. § 245a.2(m)(1).[6] The applicant testified that he did not

___

[5] Notwithstanding the Service's policy memorandum and the district court's injunction, we also note that the propriety of the actual regulation regarding the applicant's excludability has not been litigated. As an initial matter, it appears that 8 C.F.R. § 245a.2(m)(1) does not authorize the readmission of those aliens who did not procure advance parole prior to their departure from the United States.

[6] A pending temporary residence application originates on the date that an alien's application establishing prima facie eligibility for temporary status is reviewed at a Service Legalization Office. *See* 8 C.F.R. § 245a.2(m)(1). While the record contains no information regarding the applicant's legalization application, the Service has not disputed that such an application is pending.

request advance parole prior to his departure from the United States. Inasmuch as he did not have any other form of entry document, we find that the applicant properly belongs in exclusion proceedings.

However, the applicant claims, and the Service does not dispute, that the applicant has demonstrated evidence of CSS class membership eligibility, and has received a CS1 designation in the Service's Central Indexing System. The Service's May 18, 1993, policy memorandum indicates that, notwithstanding the applicant's lack of entry documents, he may therefore be paroled into the United States for a period of 1 year if his departure is determined to be "brief, casual, and innocent." The question before us is whether an Immigration Judge has the authority to make such a determination. We find that the Immigration Judges and this Board do not have such authority.

Section 245A of the Act allows for a single level of administrative review from adverse legalization decisions. *See* section 245A(f) of the Act. Federal regulations state that aliens may appeal their decisions to the Administrative Appeals Unit ("AAU") of the Service. 8 C.F.R. § 245a.2(p).[7] Clearly, we have no jurisdiction over the applicant's legalization application. However, we must determine if and how his CS1 legalization status affects his exclusion proceedings.

At the outset, we note the sympathetic posture of the applicant's case. The applicant clearly departed the country under exigent circumstances. However, we must find that we are unable to consider the nature of the applicant's departure. We simply find no authority by which the Immigration Judge or this Board may apply the *Fleuti* doctrine to the applicant's attempted entry.

In *Matter of Quintero*, 18 I&N Dec. 348 (BIA 1982), we held that the authority for a grant of deferred action status rests solely in the district director's prosecutorial discretion and that, therefore, neither the Immigration Judge nor the Board may grant such status or review a decision of the district director to deny it. We find this holding applicable to the instant case, inasmuch as the Service's ability to grant deferred action status may be found only in the Service's Operations Instructions. *See* O.I. 103.1(a)(1)(ii). Such authority is mentioned nowhere in the statute or the regulations, but is simply the result of an administrative policy to give low priority to the enforcement of the immigration laws in certain cases. Like the Service's deferred action status authority, the directive of the Service's May 18, 1993, memorandum

---

[7] Although the AAU's decision is the final agency action on the application, a legalization applicant has a "latent" right to judicial review. *See Reno v. Catholic Social Services, supra.* As the Supreme Court explained, an alien whose appeal has been rejected by the AAU stands in the same position as he did before he applied: he is residing in the United States in an unlawful status, but the Service has not yet discovered his presence. *See* section 245A(c)(5) of the Act. Therefore, an AAU denial does not automatically trigger a deportation proceeding; rather, the alien must either surrender or wait for the Service to find him. After a deportation hearing has been conducted and an order has been issued, the alien may then challenge his legalization denial in a circuit court of appeals. *See generally* section 105 of the Act, 8 U.S.C. § 1105 (1994).

exists solely as an internal guideline of the Service. It does not confer substantive rights on an excludable class member which he may litigate in exclusion proceedings. The Act and regulations consistently limit the Immigration Court's jurisdiction over legalization proceedings, and we find no affirmative authority to either determine or review the Service's decision regarding the nature of the applicant's departure.[8]

Moreover, we find that the substance of the Service policy itself clearly grants a remedy beyond the scope of our jurisdiction. The Service's May 18, 1993, memorandum allows for an alien to be paroled into the United States for a period of 1 year. The district director has exclusive jurisdiction to parole an alien into the United States pursuant to 8 C.F.R. § 212.5(a) (1995). Again, neither the Immigration Judge nor this Board has jurisdiction to exercise parole power. *Matter of Matelot,* 18 I&N Dec. 334 (BIA 1982); *Matter of Castellon,* 17 I&N Dec. 616 (BIA 1981). Logically, our enforcement or review of the Service's memorandum would create a class of aliens without status. The Service correctly argues in its appellate brief that the Immigration Judge's termination of the applicant's proceedings infringed upon the Service's authority as vested in the district director.

## VII.  CONCLUSION

Ultimately, then, we find that a class member's status has very little bearing on the Immigration Judge's consideration of his excludability, and we find that such status creates no substantive rights which the applicant may

---

[8] The United States District Court for the Southern District of New York recently issued *Fernandes v. McElroy*, 920 F. Supp. 428 (S.D.N.Y. 1996), and found therein that the Immigration Judges and this Board do have the authority, pursuant to section 245A of the Act, to consider the brief, casual, and innocent nature of an applicant's departure. In so finding, the district court interpreted section 245A(3)(A) of the Act as requiring an alien to establish continuous physical presence throughout the temporary residence application period; in other words, the requirement of maintaining continuous presence does not cease with the filing of a 245A application. Based on this reading of the statute, the district court also found section 245A(3)(B) of the Act, which excepts brief, casual, and innocent absences from disturbing an applicant's continuous physical presence, applicable throughout the alien's application period. Since the court ultimately found that 8 C.F.R. § 245a.2(m)(1) impermissibly "grafts" the further requirement of advance parole onto section 245A(3)(A) of the Act, the regulation was found to be invalid.

In our view, the district court fails to distinguish between section 245A of the Act, which addresses eligibility for temporary resident status, and the concept of excludability, which involves an alien's ability to legally enter the United States. We clearly have no authority to decide whether an applicant, ordered excluded by this Board due to lack of proper documents, may still demonstrate eligibility for temporary resident status pursuant to the district court's interpretation of the section 245A requirements. As to excludability, we note that Congress did not create an exception to section 212(a)(7)(A)(i)(I) of the Act, 8 U.S.C. § 1182(a)(7)(A)(i)(I) (1994), when it enacted section 245A of the Act. Moreover, the definition of "entry" set forth at section 101(a)(13) of the Act, 8 U.S.C. § 1101(a)(13) (1994), has not been revised, and neither section 245A nor section 210 of the Act includes any waiver for this exclusion ground.

claim at his hearing. The Service's May 18, 1993, memorandum addresses policy issues left within the scope of the Service's prosecutorial discretion. Neither we nor the Immigration Judges may question the distinctions raised in the Service memorandum, nor may we extend our authority to substantively review the Service's determination as to whether or not to initiate exclusion proceedings against a CSS class member. While we will continue to request that the Service provide a copy of the applicant's CIS sheet in those cases in which the Immigration Judge or this Board deems it necessary, we otherwise find a class member's status, and the nature of his departure from the United States, beyond our authority to question. Those decisions lie solely in the jurisdiction of the Service.

In the applicant's case, we must find that the Immigration Judge erred by employing the *Fleuti* doctrine and by subsequently terminating the applicant's exclusion proceedings. The Service clearly determined that the applicant's departure did not entitle him to a grant of parole upon his return; it therefore chose to institute exclusion proceedings. As long as the Service chooses to prosecute the applicant's proceedings to a conclusion, the Immigration Judges and this Board must order the applicant excluded and deported if the evidence supports such a finding. *Matter of Yazdani*, 17 I&N Dec. 626 (BIA 1981). The Service's policy memorandum grants neither the Immigration Judges nor this Board authority to do otherwise.

Accordingly, we will remand the record to the Immigration Judge for a determination of the applicant's admissibility.

**ORDER:**     The appeal is sustained.

**FURTHER ORDER:**     The record is remanded to the Immigration Court for further proceedings consistent with the foregoing decision.

Chairman Paul W. Schmidt and Board Member Lauri S. Filppu did not participate in the decision in this case.

*CONCURRING IN PART AND DISSENTING IN PART:* Lory D. Rosenberg Board Member

I respectfully concur in part and dissent in part.

I do not take issue with the reasoning of the majority that the applicant's eligibility for legalization benefits as a class member in *Catholic Social Services v. Meese,* 685 F. Supp. 1149 (E.D. Cal. 1988) ("CSS"), is not for this Board to determine. To my mind, however, that has little bearing on the Immigration Judge's consideration of whether exclusion proceedings are proper in this case. In my view, by refusing to address the nature of the applicant's departure from the United States, the majority fails to properly exercise its authority and to discharge a fundamental responsibility belonging to this Board and to the Immigration Judges; that is, to make the fundamental jurisdictional determination regarding the propriety of the applicant's exclusion proceedings.

After living here for 16 years and applying for legalization, the applicant before us left the United States on this particular occasion for family reasons. Eligible to apply for both legalization and suspension of deportation when he departed, he returned to this country and was deemed ineligible for admission by the Immigration and Naturalization Service. Upon my review of the record,[1] and my own reading of the Immigration and Nationality Act and pertinent case law, I conclude that the Immigration Judge correctly analyzed the circumstances of the applicant's departure from the United States, and I share her conclusion that the applicant's trip was brief, casual, and innocent, and did not meaningfully interrupt his presence in this country. Accordingly, upon his return from India, the applicant was not required to seek admission and was improperly placed in exclusion proceedings.

## I. THE STATUTE REQUIRES IMMIGRATION JUDGES AND THIS BOARD ALIKE TO ADDRESS BRIEF, CASUAL, AND INNOCENT ABSENCES UNDER SECTION 245A

In the Immigration Reform and Control Act of 1986, Pub L. No. 99-603, 100 Stat. 3359, 3394, ("IRCA") Congress created the legalization program under which aliens long present in the United States could regularize their immigration status. Congress provided that a legalization candidate who makes a brief, casual, and innocent trip outside the United States does not interrupt the required period of continuous physical presence. *See* sections 245A(a)(3)(A), (B) of the Immigration and Nationality Act, 8 U.S.C. §§ 1255a(a)(3)(A), (B) (1994). Thus, Congress included, within the legalization program, the underlying rationale of *Rosenberg v. Fleuti*, 374 U.S. 449 (1963), that in appropriate circumstances aliens should be spared the unintended consequences of a departure from the United States.

Specifically, Congress added to the legalization statute, the following provision:

> An alien shall not be considered to have failed to maintained [sic] continuous physical presence in the United States for purposes of subparagraph (A) by virtue of brief, casual, and innocent absences from the United States.

Section 245A(a)(3)(B) of the Act.

The majority reads section 245A(a)(3)(B) of the Act narrowly, construing it to relate solely to the legalization application itself and not to the general ability of a legalization applicant to leave and return to the United States. *See*

---

[1] This Board conducts a de novo review of the record. *Matter of Burbano,* 20 I&N Dec. 872, 874 (BIA 1994); *Matter of Edwards,* 20 I&N Dec. 191 (BIA 1990). In my view, a de novo review of the record is not limited only to arguments which may or may not have been framed on appeal, but requires us to review the entire record and the order appealed to this Board with respect to the governing statute and case law.

*supra* note 8. I believe such a narrow reading to be incorrect.[2] While this Board may be limited in assessing an alien's continuing eligibility for legalization benefits, I do not believe we are equally constrained with regard to other provisions of the Act, including an interpretation of section 245A(a)(3)(B) of the Act.

In the instant case, this Board need not examine the "brief, casual and innocent" nature of the applicant's trip as it relates to his continuing eligibility for legalization. However, we cannot refuse to perform this examination as it relates to the applicant's ability to return to the United States without being treated as though he were seeking to enter. *See Fernandes v. McElroy,* 920 F. Supp. 428 (S.D.N.Y. 1996); *De Olivera v. United States INS,* 873 F. Supp. 338 (C.D. Cal. 1994). To shut our eyes to this issue is to do more than simply respect the Service's authority over the legalization program. It is to abdicate to the Service the authority to determine our own jurisdiction, and to divest the phrase, first found in *Rosenberg v. Fleuti, supra*, of a meaning it has maintained for over 30 years.

## A. The *Fleuti* Doctrine

In *Rosenberg v. Fleuti, supra,* the Supreme Court carved out an exception to the statutory definition of entry in the then-current version of section 101(a)(13) of the Act, 8 U.S.C. § 1101(a)(13) (1958), holding that a lawful permanent resident who departs the United States for a brief, casual, and innocent purpose does not meaningfully interrupt his or her period of residence. The Court concluded that the alien's return to the United States does not constitute an entry; rather, the alien's status for all purposes should continue as before the departure. In so finding, the Court hesitated to strictly define these terms, but instead left the definition to be developed "by the gradual process of judicial inclusion and exclusion." *Id.* at 462.

Congress was well aware of the historic meaning of *Fleuti* when it enacted IRCA some 20 years later. *See* H.R. Rep. No. 682(I), 99th Cong., 2d Sess. 116, *reprinted in* 1986 U.S.C.C.A.N. 5649, 5720. We are bound to follow the plain terms of the statute, and I would find that the traditional meaning of the phrase "brief, casual, and innocent," as included in IRCA, does not include a

---

[2] As discussed *infra*, regulations found at 8 C.F.R. §§ 245a.2(l) and 245a.2(m) (1995) require that a legalization applicant must secure advance parole prior to departing the United States in order for the departure to be termed "brief, casual and innocent". The CSS litigation and the ensuing Service policy memorandum have addressed how advance parole relates to an alien's continuing eligibility for legalization, but other courts have considered the more expansive question regarding whether advance parole is a valid requirement for *admission* after a brief, casual, and innocent departure. At least two courts have concluded that the advance parole requirement constitutes an ultra vires expansion by the Service of the express statutory requirements for continuous physical presence. *See Fernandes v. McElroy*, 920 F. Supp. 428 (S.D.N.Y. 1996); *De Olivera v. United States INS*, 873 F. Supp. 338 (C.D. Cal. 1994); *cf. Kasbati v. INS*, 805 F. Supp. 619 (N.D. Ill. 1992) (upholding the advance parole requirement).

requirement of advance parole.[3] In fact, as the court stated in *De Olivera v. United States INS, supra,* at 343, "Congress intended not to encumber the historical meaning of a brief, casual and innocent absence with artificial constraints such as arbitrary temporal limitations or advance parole." I agree. Whatever the effect of the regulation on the applicant's eligibility under section 245A, a matter for the federal courts to determine, I believe it inappropriate to so restrict the term for all purposes under the Act.

## B.  Interpretation of Section 245A(a)(3)(B)

I read section 245A(a)(3)(B) to extend the benefit of the *Fleuti* doctrine to legalization applicants, without reservation or limitation. As the majority notes, the United States District Court for the Southern District of New York held, in *Fernandes v. McElroy, supra*, that section 245A(a)(3)(B) of the Act allows for brief, casual, and innocent absences, not only in relation to the application phase, but throughout the pendency of the applicant's legalization adjudication. *See also De Olivera v. United States INS, supra,* at 342 n.8. I agree. One court that has considered this issue has stated its conclusion this way:

> The legalization program established by IRCA provides applicants with important rights, and applicants for legalization clearly occupy a protected position in the United States during the period that they are seeking an adjustment of status. Thus, the rationale for applying the entry exception to permanent resident aliens also applies to legalization applicants who make a brief, innocent, casual departure from the United States. Such a departure does not subject the aliens to the consequences of an "entry" upon their return.

*Campos v. Smith*, 791 F. Supp. 262, 265 (W.D. Wash. 1991).

Recently, in *Matter of Chavez-Calderon,* 20 I&N Dec. 744 (BIA 1993), this Board itself gave support for this expansive interpretation of the *Fleuti* doctrine as set forth in section 245A(a)(3)(B). Therein, we noted "a crucial distinction" between special agricultural workers on the one hand and "aliens eligible for adjustment under section 245A, lawful permanent residents, and applicants for suspension of deportation on the other." *Id.* at 748. Aliens in the latter category, the Board observed, "possess some form of long-term residence in the United States and concomitant ties to this country, a concern which was foremost in the Supreme Court's crafting of the *Fleuti* doctrine." *Id.*[4] While this Board did not articulate the extent to which a legalization

---

[3] Indeed, such limitation would be antithetical to the docrine itself. Properly applied, the concept is meant to preserve the alien's predeparture status by not treating the alien's return as constituting an entry. Instead, as discussed *infra*, the Service's regulation, 8 C.F.R. § 245a.2(m), treats the alien as making even less than an entry: it places her or him in "parole status," thus requiring that any subsequent hearing be in the exclusion context, rather than the deportation context. *See, e.g., De Olivera v. United States INS, supra; Navarro-Aispura v. INS*, 842 F. Supp. 1225 (N.D. Cal. 1993), *aff'd*, 53 F.3d 233 (9th Cir. 1995); *Campos v. Smith*, 791 F. Supp. 262 (W.D. Wash. 1991).

[4] This Board has also followed the United States Court of Appeals for the Ninth Circuit in *Ortega de Robles v. INS*, 58 F. 3d 1355 (9th Cir. 1995), in recognizing the legal significance of

applicant under section 245A of the Act is protected by the *Fleuti* doctrine, my interpretation of section 245A(a)(3)(B) is consistent with notions of equal protection due those long-term undocumented aliens awaiting temporary resident status.

I recognize that a determination by this Board on whether the applicant's trip satisfied the "brief, casual, and innocent" standard may be binding on a subsequent assessment by the Service on whether the applicant satisfies the legalization requirement for continuous physical presence. That is the reason, I believe, why the majority seeks to avoid deciding this issue, asserting that this matter is wholly within the province of the Service. While I concede that some overlap will result if we exercise authority in this case, the alternative is wholly unacceptable. The Service has issued no assessment whether the applicant's trip satisfies the "brief, casual, and innocent" standard. Because the majority refuses to consider the question, the issue will go to district court without the benefit of any written assessment by the agency entrusted with administering the Act and possessed with the expertise to evaluate the effect of such departures. I believe the Act and case law allows us to employ our expertise to address these issues.

## II. AN ALIEN'S DEPARTURE AND RETURN MUST BE CONSTRUED CONSISTENT WITH APPLICATIONS OF THE ENTRY DOCTRINE IN OTHER SECTIONS OF THE ACT

I find support for this more expansive interpretation of section 245A(a)(3)(B) in the historic intent of the Supreme Court not only in *Rosenberg v. Fleuti, supra*, but in Congress' recent amendments to other statutory provisions regarding the reentry doctrine. The applicant is not merely a legalization candidate. Assuming that he can show he is of good moral character, that he can establish a period of continuous physical presence in the United States for more than 7 years, and that he can demonstrate extreme hardship flowing from his potential deportation to himself or to qualifying family members, he is also eligible for suspension of deportation, a separate form of statutory relief which may be granted in the exercise of discretion under section 244(a)(1) of the Act, 8 U.S.C. § 1254(a)(1) (1994).

Eligibility for this form of relief from deportation was enhanced by a provision in IRCA which added section 244(b)(2) to the Act. That amendment provides that brief, casual, and innocent absences will not interrupt a period of continuous presence for purposes of satisfying that requirement.[5] Thus,

---

the ties forged as the result of longtime residence, and holding that a former legalization applicant may count towards the requisite period of lawful domicile years of residence accumulated while a temporary lawful resident. *Matter of Cazares,* 21 I&N Dec. 188 (BIA 1996); *see also White v. INS,* 75 F.3d 213 (5th Cir. 1996); *Matter of Ponce De Leon*, 21 I&N Dec. 154 (BIA 1996).

[5] In *INS v. Phinpathya,* 464 U.S. 183 (1984), the Supreme Court held that any departure from the United States, however brief, broke the period of continuous residence required for

not only should such absences have no effect on the applicant's eligibility for legalization under section 245A(a)(3)(B), they would also not render him ineligible for suspension of deportation, should his legalization application ultimately be denied by the Service.

Consider for a moment the Hobson's choice faced by a legalization applicant who sought to take advantage of these clear expressions of congressional compassion but needed to travel. If he or she obtained advance parole from the Service, pursuant to 8 C.F.R. § 245a.2(m), eligibility for legalization would be preserved. However, eligibility for suspension would be lost, because the alien who travelled pursuant to advance parole would be returning to the United States in "parole status" and thus would be subject to exclusion proceedings. Alternatively, the legalization applicant could forego advance parole (and the resulting loss of suspension eligibility) by departing "without permission" and by attempting surreptitious entry upon return. To do so, however, would be to jeopardize his or her eligibility for legalization.[6] To read the statute as calling for such an unprecedented "election" of remedies, one of which encourages an implicit disregard of the immigration laws, creates a situation in which nobody wins.

Could Congress possibly have intended such a result? I think not. In attempting to find a rational construction for these provisions, I believe it is instructive to examine the way in which Congress handled the consequences of a temporary departure for candidates for other forms of relief—family unity and temporary protected status ("TPS")—created as part of the Immigration Act of 1990, Pub. L. No. 101-649, 104 Stat. 4978 ("IMMACT").[7] In response to expressions of concern that family unity and TPS status holders who obtained advance parole as then construed by the Service could forfeit their right to apply for other forms of relief such as suspension of deportation, Congress enacted section 304 of the Miscellaneous and Technical

---

suspension of deportation. Two years later, Congress abrogated the harsh effect of this decision by enacting section 315(b) of IRCA, 100 Stat. at 3439-40, which added section 244(b)(2) to the Act. That amendment provides that brief, casual, and innocent absences will not interrupt a period of continuous residence. In enacting this change, Congress intended to replace the rigid test in *INS v. Phinpathya* with a more flexible means of satisfying this statutory requirement for suspension. *See* H.R. Rep. No. 682(I), 99th Cong., 2d Sess. 78, *reprinted in* 1986 U.S.C.C.A.N. 5649, 5682.

[6] Of course, as here, the legalization applicant who departs by choice or necessity without advance parole can present himself to an immigration inspector at a port of entry, but without extension of the statute as I urge here, he is likely to forego both legalization eligibility and access to suspension.

[7] The family unity provision was enacted as a short-term mechanism to address a problem for alien relatives of legalization applicants. It provided for a stay of deportation for spouses and children of aliens who were applying under the legalization program. *See* section 301 of IMMACT, 104 Stat. at 5029. The temporary protected status provision, on the other hand, added section 244A to the Immigration and Nationality Act, 8 U.S.C. § 1254a (1994). It created a mechanism for granting safe haven to aliens in the United States who were temporarily unable to return safely to their home due to war, natural disaster, or other emergency condition.

Immigration and Naturalization Amendments of 1991, Pub. L. No. 102-232, 105 Stat. 1733, 1749. That provision stated that TPS or family-unity holders who travel under advance parole "shall be inspected and admitted in the same immigration status the alien had at the time of departure." The provision also specifically provides that this authorized departure will not affect the requirement of continuous physical presence for suspension of deportation if the travel meets the requirements of section 244(b)(2) of the Act. *Id.*

A similar result could be reached easily for suspension-eligible aliens who are also legalization applicants by simply construing the provisions of the statute harmoniously. IRCA explicitly intended to make legal those in our society who previously resided here without legal documentation. Like legalization, suspension of deportation is a provision enacted by Congress to provide an alternate means for long-term residents to become lawful permanent residents. *See K Mart Corp. v. Cartier, Inc.,* 486 U.S. 281, 291 (1988) (in ascertaining "plain meaning," not only the particular statutory language, but the language and design of the statute as a whole should be considered).[8] It is absurd to conclude that IRCA would confer a status—legalization applicant—which would itself function to deprive a long-term resident of the ability to apply for suspension of deportation, simply because he or she departed the United States under emergency conditions. It is equally absurd to read the statute to hold that one who is a legalization applicant, based upon long-term residence in the United States, leaves his suspension credentials at the door, but that his qualifying family members who may have been here a shorter time, do not.[9]

It simply cannot be the case that Congress authorized two forms of relief in the same statute, only to force eligible aliens to abandon one by electing the other. Indeed, if that is the case, then the entire purpose of IRCA is frustrated and those seeking to become part of our society legally are given a mixed message. Thus, I believe we must look to see if there is another way the suspension and legalization provisions can be reconciled.

---

[8] In particular, it is unreasonable to conclude, as one might otherwise have to, that Congress intended subsection 244(b)(2) to preserve eligibility for suspension only for those legalization applicants who violate the Act by illegal reentry. As the Ninth Circuit recently emphasized, "The evident statutory purpose [of subsection 244(b)(2)] is to recognize that a person who lives for seven continuous years in the United States does not destroy his eligibility by actions that do not affect his commitment to living in this country." *Castrejon-Garcia v. INS*, 60 F.3d 1359, 1362 (9th Cir. 1995) (citations omitted).

[9] See *INS v. Phinpathya, supra,* at 198 (Brennan, J., concurring) (stating that all laws should receive a sensible construction and should not lead to injustice, oppression, or an absurd consequence; therefore it always is presumed the legislature intended exceptions to its language); *Caminetti v. United States*, 242 U.S. 470, 490 (1917) (finding that unless leading to absurd or wholly impracticable consequences, plain language is the sole evidence of legislative intent); *see also Castellon-Contreras v. INS*, 45 F.3d 149, 153 (7th Cir. 1995) (construing "domicile" as distinct from "lawful permanent resident" status does *not* lead to an absurd result).

By allowing TPS and family-unity aliens to reenter in the same status in which they departed, Congress created a benefit for those who traveled with the advance permission of the Service, a benefit not specifically created for legalization applicants. If a legalization applicant obtains advance parole from the Service (or, as is the case with the applicant before us, does not require advance parole because of his CSS class membership), I believe that we should construe the congressional silence in the legalization program to have implicitly authorized the same form of relief explicitly granted to TPS and family-unity aliens. This construction would allow the alien to return to the status that he or she left upon her departure, so long as the absence is brief, casual, and innocent. Similarly, a legalization applicant who attempts to maintain eligibility for suspension by travelling without advance parole should not be penalized for this action if the departure was brief, casual, and innocent. In either case, the Immigration Judge must determine if the trip falls within the contours of the "brief, casual, and innocent" standard. If so, exclusion proceedings should be terminated.[10]

## III. CONCLUSION

Nothing in this dissent should be read to advance the proposition that all aliens in this country have a right to enter and depart at will, so long as their departures are brief, casual, and innocent. As the Court of Appeals for the Ninth Circuit has noted, while Congress has expanded the *Fleuti* doctrine to legalization applicants and to aliens eligible for suspension of deportation, it did not indicate that the doctrine applies to all undocumented aliens. *See Mendoza v. INS,* 16 F.3d 335 (9th Cir. 1994). Nevertheless, for those aliens who fall into these congressionally protected categories, I am convinced that this Board has an obligation to assume jurisdiction where required and to construe the various statutory enactments in a way that advances the clear and compassionate intent of the Congress.

By focusing its decision exclusively on the issues pertaining to the applicant's status as a legalization candidate, the majority fails to address the nut of the issue: whether or not exclusion proceedings are proper. Given Congress' express intention to apply the "brief, casual, and innocent" concept to legalization and a variety of other situations, I would find the applicant's departure not to have been meaningful, and his return not to constitute an entry within the meaning of the Act. Should the Service determine it is

---

[10] While originally this Board held in *Matter of Torres,* 19 I&N Dec. 371 (BIA 1986), that it would not extend the *Fleuti* doctrine to aliens who had not been admitted for lawful permanent residence, I believe the prior decisions of this Board should be viewed in light of two developments: 1) the extension of the "brief, casual, and innocent" principle to contexts other than those involving the departures of lawful permanent residents; and 2) the significant statutory change to section 244 of the Act. Moreover, as noted previously, the Board has revisited this issue and arrived at a different conclusion, albeit in dicta, in *Matter of Chavez-Calderon, supra.*

appropriate to treat him as present in this country without authorization, or in violation of any other provision of the Act, it may pursue these or any other charges in the deportation context.